UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Renee Fazica,

    Plaintiff,

v.                                          Case No. 16-13563

Zachary Jordan et al.,              Sean F. Cox
                                                       United States District Court Judge

    Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This § 1983 case stems from alleged excessive force used against Plaintiff by several jail officials during her arrival and booking at the Oakland County Jail. Defendants have moved for judgment on the pleadings or summary judgment, arguing that Plaintiff has failed to show that any individual defendant personally engaged in misconduct in violation of her rights.

For the reasons below, the Court shall grant Defendants' Motion for Summary Judgment in part and deny it in part. The Court shall deny the motion as to the four defendants (Jordan, Tucker, Cordova, and Fletcher) who were members of the team that brought Plaintiff into the jail because a genuine issue of material fact exists as to whether each defendant was present and personally involved in any violation of Plaintiff's rights. But the Court shall grant the motion as to Defendant Nicotri because there is no evidence that he was present or personally involved in any alleged violation of Plaintiff's rights.

## BACKGROUND

In October 2014, after drinking a pint of vodka, Plaintiff Renee Fazica got behind the

wheel with her teenage son in the car. Pl. Dep., p. 21-22. Eventually she was pulled over by Bloomfield Township police officers. *Id*. at 23; Def. Stmt. of Undisputed Facts, ¶ 1. The officers arrested her and took her to the police station. Pl. Dep., p. 26.

Because Plaintiff was being loud at the station, the Bloomfield Township officers decided to take her to the Oakland County Jail. *Id*. at 30-31. They contacted officials at the jail and informed them that Plaintiff was intoxicated and had been acting disorderly. Def. Ex. C, H. For this reason, a Cell Extraction Team was deployed to secure Plaintiff upon arrival and bring her into the jail. Def. Ex. H. Members of the team are trained to deal with prisoners who are unruly, combative, and non-compliant. Jordan Dep., p. 13. The extraction team consisted of five Oakland County Sheriff's deputies: Defendants Deputy Zachary Jordan, Mark Fletcher, Josh Tucker, and Carlos Cordova as well as non-party Dwayne Rodriguez. Defendant Sergeant Paul Nictori, who was working as an on-duty supervisor, was also notified of Plaintiff's impending arrival. Nictori Dep., p. 8; Def. Ex. C. He was not, however, a member of the extraction team. Nictori Dep., p. 9.

When Plaintiff arrived at the jail, she observed four men waiting for her. Pl. Dep., p. 32. Tucker, with assistance from Cordova and Rodriguez, removed Plaintiff from the patrol car, bringing her to the ground with her arm stretched back. *Id*. at 32-33; Def. Ex. C. While Plaintiff was on the ground, a spit hood was placed over her face. Pl. Dep., p. 33. The spit hood had a plastic lower half designed to prevent the wearer from spitting and netting on the upper half to allow the wearer to see and breathe. Cordova Dep., p. 11-12. It covered Plaintiff's face from the top of the bridge of her nose to the bottom of her chin. Pl. Dep., p. 33. Plaintiff testified that she could only see a "tiny bit" out of the top of the mask. *Id*.

2

Next, the team members picked Plaintiff up off the ground, stood her up, and walked her to a different location in the jail. *Id*. at 40-41. They made Plaintiff walk in a bent-over position facing the floor. *Id*. at 41-42. While Plaintiff was walking, an unidentified officer said, "follow my voice or I'll tase you." *Id*. at 42. During the walk, one of the team members had his hands on Plaintiff's neck, pushing hard enough that she complained that he was hurting her and that she could not breathe. *Id*. at 43-44. According to Plaintiff, every time she complained he gripped her neck harder. *Id*. at 44. Plaintiff does not know exactly who had his hands on her neck. *Id*. at 43.

The team brought Plaintiff to a room within the jail and began to strip search her. *Id*. at 45. She was placed face down on the floor and had her pants physically ripped off. *Id*. at 45-46. During the search, Plaintiff felt someone spread her buttocks apart. *Id*. at 46. She also felt someone put his hands up the front of her bra while another team member touched her genitals. *Id*. at 46-47. Plaintiff also testified that someone "slap punched" her while she was being strip-searched. *Id*. at 52. Although Plaintiff could not identify precisely who searched her, she recalled seeing in the room all four men she had previously observed when she arrived at the jail. *Id*. at 48.

After the search, the team walked Plaintiff, who was only wearing a bra, to a cell. *Id*. at 49. Someone threw a pair of scrubs in the corner of the cell and closed the door. *Id*. Plaintiff was booked the next morning and released. *Id*. at 50. None of the extraction team members remember this incident. *See* Cordova Dep., p. 9; Fletcher Dep., p. 10; Jordan Dep., p. 8; Tucker Dep., p. 7.

In 2015, Plaintiff sued Defendants along with Bloomfield Township, three of its police officers, and Oakland County (Case No. 15-13858, Doc. # 1). This Court granted the Oakland County Defendants' Motion to Dismiss without prejudice (Case No. 15-13858, Doc. # 25). In

3

doing so, the Court noted that Plaintiff had failed to sufficiently allege any claims against the individual Defendants, as her complaint was entirely conclusory and lacked supporting factual allegations. But the Court dismissed the case without prejudice, allowing Plaintiff the opportunity to file an amended complaint.

Eight months later, in lieu of filing an amended complaint, Plaintiff filed this action solely against Defendants Jordan, Fletcher, Tucker, Nicotri, and Cordova (Doc. # 1). She then filed an amended complaint, which contains factual allegations that are far more specific than those in the prior action (Doc. # 7). Her amended complaint raises three claims for relief: (1) a § 1983 excessive force claim, (2) a claim that Defendants' conduct amounted to "gross negligence, willful and wanton misconduct, assault, battery, and/or intentional infliction of emotional distress on Plaintiff", and (3) a § 1983 claim for deprivation of liberty without due process of law.

Defendants have moved for judgment on the pleadings or, in the alternative, for summary judgment (Doc. # 16) and Plaintiff has responded (Doc. # 22). This Court held a hearing on Defendants' motion on March 15, 2018.

**STANDARD OF DECISION**

Defendants' motion is for judgment on the pleadings or, in the alternative, for summary judgment. Because this latter motion is more inclusive, and because the parties' submissions contain matters outside the pleadings, the Court shall apply the summary judgment standard when evaluating Defendants' motion. *See* Fed. R. Civ. Pro. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

4

Summary judgment will be granted when no genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "The moving party bears the initial burden of establishing that there are no genuine issues of material facts, which it may accomplish by demonstrating that the nonmoving party lacks evidence to support an essential element of its case." *Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017) (quotations omitted). If the movant satisfies this burden, the non-moving party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

## ANALYSIS

### I. Video Footage

To begin, Plaintiff's response to Defendants' motion relies in part on the purported existence of video footage of the incident. But because any video footage of the incident is not in the record, the Court may not consider Plaintiff's proffer as to its contents.[1] *Bormuth v. County of Jackson*, 870 F.3d 494, 524 (2017) (Sutton, J., concurring) ("Rule 56 expressly limits what we may consider to 'materials in the record[.]'"), citing Fed. R. Civ. P. 56(c)(3).

---

[1] Thus, the Court need not consider Plaintiff's argument that any missing footage should be held against Defendants. What's more, this argument should have been raised in an appropriate discovery motion, not in opposition to the motion for summary judgment. *Goodman v. Praxair Servs., Inc.*, 632 F. Supp. 2d 494, 507 (D. Md. 2009).

## II. Individual Liability

Turning to the merits, Defendants' motion is very limited in scope. It raises a single issue: whether Plaintiff has sufficiently shown a genuine issue of material fact that any of the named defendants personally violated her constitutional rights. *See Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) ("[D]amages claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right."); *Pollard v. City of Columbus, Ohio*, 780 F.3d 395, 402 (6th Cir. 2015) (observing that a defendant's liability must be "assessed based on his own individual conduct and not the conduct of others.").

All three of Plaintiff's claims center around the extraction team's alleged use of objectively unreasonable force. To hold an individual officer liable in these circumstances, Plaintiff must show more than "mere presence at the scene." *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). Instead, she must show "that the officer (1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force." *Id*. (quotation marks omitted). Under the third prong, "a police officer who fails to act to prevent the use of excessive force may be held liable when (1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).

Although Plaintiff is unable to identify the precise actions undertaken by any individual defendant, this alone does not foreclose relief. The Sixth Circuit has been reticent to rule against plaintiffs who "fail to allege specific conduct by each officer when the officers' actions have

6

made them impossible to identify." *Greer v. City of Highland Park*, __ F.3d __, p. 3 (6th Cir. 2018); *see also Binay*, 601 F.3d at 651 ("[T]he fact that Defendants wore masks during the raid made it exceedingly difficult for Plaintiffs to identify with precision which officers engaged in which conduct."). Here, the extraction team members impaired Plaintiff's ability to identify them when they outfitted her with a spit hood that impaired her vision and kept her face down throughout the majority of the incident. *See Pershell v. Cook*, 430 F. App'x 410, 416 (6th Cir. 2011) (declining to grant qualified immunity when the plaintiff could not precisely identify the officers who struck him while he was face down on the ground). Plaintiff's inability to identify the precise conduct of each defendant is also exacerbated by Defendants' collective inability to recall the incident. Although Defendants are correct that there is no indication that they acted in bad faith, *cf. Burley v. Gagacki*, 729 F.3d 610, 622 (6th Cir. 2013) ("[H]ere the agents' intent to conceal contributed to plaintiffs' impaired ability to identify them."), the absence of an intent to conceal is not dispositive. It is Defendants conduct that has prevented Plaintiff from delineating their actions. To grant them summary judgment in these circumstances would still risk immunizing them to Fourth Amendment claims as a reward for successfully keeping their identities unknown. *See Greer*, __ F.3d at __, p. 3.

Indeed, on several occasions the Sixth Circuit has held that plaintiffs met their burden to ascribe liability to an individual defendant even though they were unable to identify that defendant's specific conduct. In these cases, the Sixth Circuit has held that a genuine issue of material fact exists when the plaintiff shows that the defendant was present and could have been involved in the violation of the plaintiff's constitutional rights. *See Burley*, 729 F.3d at 622 (holding a jury could reasonably find that the team members of an identified defendant were

7

personally involved in the alleged use of excessive force or failed to intervene to prevent it); *Pershell*, 430 F. App'x at 416 (affirming the denial of qualified immunity when the plaintiff provided significant information about the location and conduct of the officers and the officers provided accounts of the incident); *Binay*, 601 F.3d at 651 (holding there was a question of material fact as to the personal involvement of a defendant officer who could not be identified by plaintiffs but was present and could have been involved in the constitutional violation). These cases are distinguishable from those in which the plaintiff is completely unable to identify the officials involved or cannot show that the particular defendant was involved in the unconstitutional conduct. *See Crawford v. Geiger*, 656 F. App'x 190, 200 (6th Cir. 2016) (distinguishing *Binay* because the defendant was not present for most of the confrontation and there was no indication that he had the ability to instruct a fellow officer about that officer's use of force against the plaintiff); *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (holding that the district court properly dismissed excessive force claims against unidentified officers).

So, to create a genuine issue of material fact as to whether any of Defendants may be held liable for the alleged constitutional violations, Plaintiff must show, for each individual defendant, that the particular defendant was present and could have been involved in the violation. *See Greer*, __ F.3d __, p. 3 ("[T]he parties here do not dispute that a raid of the Greers' home occurred, and the appealing officers have been identified as the parties who executed the search warrant."); *Burley*, 729 F.3d at 620 ("Because no evidence places the state and local defendants inside plaintiffs' home at the appropriate time to witness or respond to any unconstitutional conduct that may have occurred, the district court properly granted their motion for summary judgment."). For possible involvement, Plaintiff must show that a reasonable jury

8

could conclude that the particular defendant was personally involved in the violation, failed to supervise those who were involved, or failed to intervene to prevent the violation. *See Burley*, 729 F.3d at 622; *Cole v. City of Dearborn*, 448 F. App'x 571, 577 (6th Cir. 2011). Having established the appropriate framework, the Court turns to the Defendants here.

*Defendants Jordan, Tucker, Cordova, and Fletcher.* Here, Plaintiff alleges that the Cell Extraction Team members violated her Fourth And Fourteenth Amendment rights when they brought her into the jail and when they strip-searched her. The unrefuted evidence shows that Jordan, Tucker, Cordova, and Fletcher were all members of that extraction team, each with a specific assigned role. Def. Ex. C. Although Plaintiff is unable to identify each deputy's conduct, the incident report indicates that Tucker, with some assistance from Cordova and Rodriguez, removed Plaintiff from the patrol car when she arrived. Tucker also "gained control" of her head while Rodriguez and Cordova took control of her arms. And the incident report, together with Plaintiff's testimony, shows that all four extraction team defendants escorted Plaintiff into the building, ushered her into a room, and strip-searched her. Thus, there is no reasonable dispute that these four Defendants–Jordan, Tucker, Cordova, and Fletcher–were present during the entire incident.

A jury could also infer that each of these defendants were either personally involved in any constitutional violations stemming from the extraction team's conduct or that they failed to intervene to prevent them. Each Defendant was present and participated to some degree in removing Plaintiff from the patrol car, forcibly ushering her into the jail, and strip-searching her. On this record, a jury could reasonably infer that while the incident was ongoing, these Defendants "(1) were personally involved in the alleged use of excessive force or (2) failed to

9

intervene to prevent it." *See Burley*, 729 F.3d at 622. This is sufficient to preclude summary judgment. The record "will provide the jury with sufficient information to determine the liability of each individual defendant for the alleged constitutional violation." *Pershell*, 430 F. App'x at 416.

*Defendant Nicotri*. Along with the extraction team members, Plaintiff has also sued Oakland County Sergeant Nicotri, who was working as an on-duty supervisor in the jail on the date of the incident. But, as Plaintiff conceded at the hearing, the record is devoid of any evidence that Nicotri was with the extraction team, that he had any supervisory authority over the team, or that he had any opportunity to intervene in their actions. And Plaintiff has not otherwise identified how Nicotri could have been involved in the alleged constitutional violations. Thus, on this record, Nicotri cannot be held personally liable and he is entitled to summary judgment. *Burley*, 729 F.3d at 620; *Cole*, 448 F. App'x at 577.

## CONCLUSION

For the reasons above, IT IS ORDERED that Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART. The Court shall GRANT the motion as to Defendant Nicotri but shall DENY the motion as to Defendants Jordan, Tucker, Cordova, and Fletcher. Accordingly, the claims against those four Defendants shall proceed to trial.

IT IS SO ORDERED.

s/Sean F. Cox<br>
Sean F. Cox<br>
United States District Judge

Dated:  March 21, 2018

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Renee Fazica,

    Plaintiff,

v.                                        Case No. 16-13563

Zachary Jordan et al.,             Sean F. Cox
                                                      United States District Court Judge

    Defendants.
_____/

## PROOF OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 21, 2018, by electronic and/or ordinary mail.

                                                        s/Jennifer McCoy
                                                        Case Manager